Good morning, my name is Bill Lascara and I'm an attorney with the firm Appender and Coward in Virginia Beach. I represent Wards Corner Beauty Academy. We're here today in this case about the district court, whether the district court erred in concluding that the decision-making process was free from actual conflicts of interest and the appearance of conflicts of interest. And today I will advocate that Natka's decision-making process was not free of conflicts of interest for at least four reasons. I'm going to focus on prejudgment bias being one relating to the adjudication of the case by investigators and prosecutors. Second is whether Natka's failed to play it straight in withdrawing the accreditation in light of the undisputed pecuniary interest of the chairman of Natka's, Mr. Bowman. Third is whether the court erred by failing to rule that Natka's has failed to follow its own conflict of interest rules. And then fourth is that Mr. Bowman had a conflict of interest due to his fiduciary duty owed to his employer, EEG. So starting with the prejudgment bias, the Williams v. Pennsylvania case of 2016, Supreme Court case, determined that it was an unconstitutional potential for bias exists when the same person serves as both the accuser and the adjudicator in the case. And the facts show that's what occurred here. The Natka's commissioners, there were 13 of them gathered together in groups. This is a file review team. The facts demonstrated that one of the commissioners was not present, so the file review team was comprised of Commissioner Strawn, Commissioner Smith, and then Commissioner Bowman, who was the chairman of the commission, joined into that file review team. And he was employed by EEG, who is a party that had 88 to 90-some schools, and one of them was within 12 miles and a competitor of... Mr. Oscara, to some extent, at least some of the concerns that you articulate are endemic, it would seem to me, in a system in which the licensing entity is composed of participants in the profession. It's just hard to get around the possibility of some conflict when, even if it's just by virtue of reducing the existence of competition, by having potential competitors involved in the licensing process. I mean, it's broader than these facts, is it not? Yes, Your Honor, and it repeats itself in many industries, not just this industry. However, I don't think the answer is to have a partially impartial adjudicator. Rather, the answer is to create a robust recusal process. But here, doesn't the recusal rules, as I read them, please correct me if I'm wrong, they address, as I read them, not voting on actions involving one's personal interests. So if EEG came forward, it would be problematic for Mr. Bowman to vote on that. Well, I think six, there is a conflict of interest rule, NACIS's Code of Ethics, paragraph six, abusive position, no commissioner shall abuse his or her position to gain for himself or herself or others improper personal, material, or pecuniary benefits. And here, he even had the duty as chairman to enforce the recusal policy. And he admitted that had he known his company was within 12 miles of and a competitor of Ward's Corner, he would have recused himself. He also testified that had he known that he owned stock in EEG, he would have recused himself. And so I believe that that specific provision was violated. And had he complied with it, he would not have participated in that file review team. In the prejudgment bias argument, the action form clearly indicates that they reviewed the facts and made a recommendation. So it is, and then we went into the full commission, he presented the action. The chairman of the file review team presented the recommendation, which he signed, Mr. Bowman signed, all three of them signed. And then there was a unanimous vote of the commission to withdraw the accreditation. And so... The starting point here is that administrative decision makers are entitled to a presumption of honesty. So you have a burden here. Yes. Well, I think his admission that had he known these facts, which the standard is applied in an objective way, he admitted that everyone has agreed that it's an objective standard. Case law indicates an objective standard. So your argument is objectively that these internal rules required Bowman to recuse himself? Yes. And... Specifically paragraph six. Yes. And I believe the common law due process also requires that. So the prejudgment bias argument goes, of course, not only to him, he didn't vote, but he oversaw that process, but it also goes to Commissioner Strong and Commissioner Smith. There was factual evidence that all of the other commissioners knew that that chairman, Bowman, and that the others had that recommendation. And so they have their hats on as investigators and prosecutors, and they make the recommendation. Well, they have to know that the recommendation is made. That's what they act on. There's nothing particularly suspicious about that. That's how it's presented. But they analyzed data that came from the staff and an easy way to avoid... They being the committee or they being the full board? The committee. The committee, one of the arguments that was made by NACUS is that, well, this really is just the first step of the adjudication process. It's not investigative. It's not prosecutorial. It's a part of the adjudication process. Well, if you look at the action form, that's not true. They went through the facts. The facts are presented to them by the staff. That's what the record indicated. And so if they wanted to avoid this structural conflict that they have by having people wear their investigator hat, prosecutor hat, and then take it off and put on their adjudicator hat, they easily could have the staff simply present. Okay. You realize... Well, first of all, I'm not sure that's... Your answer contains a lot of pieces, and if you pack them, I'm not sure you've established a structural conflict. Most boards that I sit on act on the basis of recommendations from committees. And I... Okay. Let me back up. Even if we agree with your characterization of the facts that Bowman was aware that there was a conflict, how are the district court's factual findings? In what respect were they clearly erroneous? Well, as it relates to the... With respect to prejudgment bias. Prejudgment bias. I think that... I don't know that there are any factual findings that are erroneous there, but I believe that the conclusion that that constitutes a conflict of interest which violates the common law due process rights is where the court got it wrong. It seems to me he didn't rule that they were not prosecutors or they weren't investigators. He actually said that it was not a tribal issue because it wasn't included in the point. It was a very... I think it was a very general statement of the trial issues, and that is it was one of the adjudicators subject to a conflict of interest. And prejudgment bias is just a form of a conflict of interest. And so we believe that it certainly was a tribal issue. Thank you. Just one more question quickly. Does it matter for purposes of your argument that the board determination was unanimous? No, I don't believe it does. I think the Williamson versus... The Williamson case is one that indicates that if there is a structural problem with the configuration, then you have to throw out the ruling. And here we think there is, not only for the prejudgment bias, but because of the undisputed pecuniary interest of Chairman Bowman. And I think the facts are clear that he owned stock, although he claimed he didn't really understand that he owned stock. He did own stock, and he signed a note. And while his stock interest is only 0.67%, certainly when you sign a note for approximately $300,000 and you have interest accruing and you have to repay $322,000, you're going to remember that. And so I think it's a significant amount of money involved, even though it's a very small percentage of the ownership interest there. But he also admitted, along with his principal and CEO, that EEG was a competitor of Ward's so the fact that Mr. Shoneman refused to turn over documents because he said he's not going to turn them over to a competitor in this litigation process demonstrates that there was a high level of competition. There wasn't a high... Yeah, the district court judge made findings that suggested given the demographic attributes of the students in this case that as a practical matter, the competition, if any, wasn't really all that significant for a number of reasons. And he made factual findings with respect to that, but what was clearly erroneous about that? Well, the amount of money associated with even three students is significant. It's approximately $16,000 to $18,000 in tuition. And he acknowledged that there were at least three students that came over after Ward's Corner went out of business and those three students themselves would be $54,000 in tuition. The amount of profit for that, I'm not sure, but with a 90 school empire, you put more students and more revenue into one of your sites, it pulls overhead. So you have not only contributions to overhead, but you have profit. The district court's finding in that regard was clearly erroneous. That was what I was asking you before. Yes. But the district court was only saying that there was a request, right? I'm sorry. A request for documents. In other words, these students made a request to have their records transferred. Was there proof that they actually did transfer? Yes, I believe three. The record, I believe, demonstrates that three of them actually did transfer. I believe they only asked for documents to transfer. My understanding of the records was they requested, they asked for documentation to transfer. Not that they actually transferred. I'm sorry. My recollection was different. I can look at the record. Yes. Yes. I see I'm running short on time, and so I want to get to the third issue. Excuse me. The district court erred by failing to rule that NACIS's failure to follow its conflict of interest rules violated Wards Corner's common law due process rights. We started there. If we agree that he abused his position to gain for himself improper personal, material, or pecuniary benefits. Yes. Himself or others is how it rules. In his company, EEG, of which he was a stockholder, he was the president of the company. He had interest in bonuses. He obviously had a pecuniary interest that would redound to him if they got rid of a competitor. And there was evidence that not only did he sit with Wards Corner, but there were at least two others that lost their accreditation as he oversaw that proceeding that day. So you were asking us really to say that any financial involvement whatsoever is preclusive. You were talking about a structural defect, and structural suggests to me that it's any, I mean, a dollar. Is there a de minimis range, is I guess what I'm asking? Or if it's structural, does it have to be anything? I think that it is a lower standard than what the judge identified. The problem here, and this is where I started out, you have everyone in that room probably had some vested interest in getting rid of a competitor. Just that's the nature of the pool. One fewer competitors means more money that inures to the benefit of those that remain. So what the question is, is how do you draw a line? How do you write the opinion? Right, because it's Mr. Bowman and not everybody else on that board. Well, I think in following the law that is out there, number one, the amount, $5 has been found, albeit it was... So anybody in that room who owned a business, and they all apparently, they were all in this business, would probably be disqualified. I don't think that all of them were competitors of and would stand to benefit from the loss of accreditation of Ward's Corner. I do think that everyone who is, is required to recuse themselves, and it should be erring on the side of caution. And so when you're within 12 miles and you admit that you are a competitor, under those facts, if you have even a dollar's worth of pecuniary interest, I think there should be under the common law a duty to recuse yourself. And it is not going to bring down the entire due process of, or self-governance process of industry decision makers if you have a strong recusal policy. I see my time is up. Thank you. Good morning. May it please the court. Julia Whitelock on behalf of National Accrediting Commission of Career, Arts and Sciences, or NACIS for short. The district court correctly applied a disqualifying pecuniary interest standard that necessarily considered the peer review nature of accreditation. And before I get to the standard, I want to talk to the court about peer review, the peer review process and the accrediting agencies and licensing boards that will be responsible for the court's decision. So accrediting agencies are statutorily defined as entities that conduct accrediting activity through voluntary non-federal peer review. That's at 34 CFR 602.3. And the DOE has recognized accrediting agencies as reliable authorities as to the quality of education. This court recognized that in professional massage therapy, that accreditation is necessary for a control over the quality of education and assurances of that quality to the public. Given what we've seen in the facts in this case, would NACIS do it any differently going forward? Does it see any scope for lessons learned here for lowering the risk of a challenge going forward? I think there are two issues here. One is the standard that this court announced in professional massage that the court cannot substitute their judgment for that of the accreditation. Did you understand my question? I'm asking if you think this was handled as well as it could have been handled? I think that the commission is probably looking at their conflict of interest policy, but that this is a situation where... I understand. My question puts you in an awkward position. I don't want to suggest that it's deficient, but almost everything could be improved, even if it's acceptable. As part of being an accrediting agency, all accrediting agencies are required to continuously improve. So in that regard, yes. Thank you. But the standard... One thing that concerns me about the analysis is here, talking about only three students requesting their records from Wards Court and Beauty Academy to transfer to EEG. This isn't really a case in which you have to show damages, is it? So if the 12 miles is of itself a problem, and the fact that they were so close geographically is a structural problem, as Mr. Lucero says, doesn't really matter whether anybody requested, does it? Or are you saying it goes to support the factual finding of the trial court that Norfolk and Virginia Beach draw from different pools? Well, it goes to the factual findings of the court, but it also is an issue with the standard. And the standard is and should be a case-by-case analysis of what is that substantial pecuniary interest that is involved. But does it really matter whether anybody actually transferred or not, is what I'm asking. If the board member has the interest, that could be disqualifying irrespective of whether anybody tried to transfer, isn't it? That seems to be one of the factors that various courts have looked at, is what is the past competitive interest? What is the possibility of competition? Looking at the market, looking at the distance as one factor of many. And a point that I was going to make is that while we're looking at NACIS that accredits 1,300 schools throughout the United States, there are creditors that accredit far fewer in the United States. For example, the Council on Chiropractic Education accredits chiropractic programs in only 16 institutions. So if the court were to announce a specific distance would be creating a disqualifying interest, it would have no meaning for an institution like that. Similarly, there are state licensing boards that may look to this decision that are far smaller geographic regions, such as the District of Columbia is only 68 miles square and heavily populated. Ms. Whitelock, Mr. LaScarra began his argument by pointing out in hindsight that Mr. Bowman had suggested that if he had known about these interests, the competitor interest, the stock interest, that he would have recused under the internal policy rules of the board. Why isn't that enough to suggest a problem, a due process issue in this case? Based on this court's prior case law and also a factual issue. So based on the prior case law in Revepco, that judge believed that he had a disqualifying interest, recused himself, and the court in looking at the basis for his recusal determined that he did not have a legal disqualifying pecuniary interest. So just because Mr. Bowman thought he might have, based on this lawsuit, it's not dispositive that he actually should have disqualified himself. Is it at all relevant? It could be. But looking at the facts of his complete testimony, Mr. Bowman waffled a bit on that issue. He was asked by both parties, council as well as the court, went back and forth and ultimately explained that in cases since this lawsuit has been brought, he would sit on a committee or as the chair where there are situations where the school would not be, well, where there would be a positive outcome because he believed that his participation brought a benefit to the process. If he thought that there was a negative outcome that was possible, he would leave. So he did not actually think he had a conflict. And ultimately, the reason for that— The disqualification is an objective standard, is it not? That is correct. So why does that help advance the cause to talk about what he would think? His admission alone does not create an objective disqualified pecuniary interest. And what this court is likely to determine, whether the district court's standard was appropriate or not, that standard is what would indicate whether there's an objective disqualified pecuniary interest. So turning to the standard, the standard that the Supreme Court announced is a disqualifying pecuniary interest is one that is direct, substantial, personal, and pecuniary interest in the outcome of the case. It is not a slight— Sorry. It is not a slight pecuniary interest, as we believe that Ward's-Corner is asserting here. And the Supreme Court expressly rejected that standard in the Lavoie case. The Fourth Circuit has stated what is a direct and personal versus a remote and contingent interest in In re Vepco where there is presently an interest that exists or will be created by a judgment of the decision-maker. But the internal policy is aspirational, and it doesn't say— It doesn't include qualifiers. Or rather, it says improper, personal, material, or pecuniary benefit. So it doesn't say direct, or there are no adjectives such as are present in the language that you just cited to me. Is Your Honor asking about Nargis' conflict policy? Yes. The argument is— Nargis failed to follow, or Mr. Bowman failed to follow, its own conflict of interest rules. So what the rule is in the cases you're referring to, how is that applicable or helpful in assessing the third of appellant's arguments? Well, we would look to the factual findings of the court and the factual findings of the court support that there was no actual bias. The only bias that was alleged was— We're not talking about bias. We're talking about paragraph—or I wasn't. We're talking about the paragraph that talks about—paragraph 6, which talks about improper, personal, material, or pecuniary benefit. And your question is why does that not mirror the language of the Supreme Court decision? Why does the language—why is the— why is our construct, the language, the Supreme Court's interpretation of different language controlling when we look at this language? The Supreme Court's standard is controlling because this is a common law undue—sorry— common law due process claim brought in a lawsuit. The conflict language that appears in Nargis' conflict of interest rules is something that the commission created that— But why is it the fact that there's an allegation that Mr. Bowman failed to follow Nargis' own rules relevant to our determination? Because the allegation is incorrect based on the standard and based on the facts of this case. So, let me address some of the— my colleague's arguments about prejudgment interest. First of all, this is not an argument that was preserved for this court. It was not a tribal issue, which is made clear in the court's motion for summary judgment order  The only issue that the pre-judgment interest plaintiff asserted to the court and that the court believed was on trial was the pecuniary interest of Mr. Bowman. Further, counsel's own position at trial was that this was not important. Based on the questions that the court had during trial, Nargis' counsel believed that maybe the court had a question about how information got to the commissioners. So, Nargis presented the deposition testimony of one of the former staff members, which is at— I'm sorry, I don't have that site. It's part of the record. And Ward's coroner's position was that information was irrelevant. It was irrelevant who was doing the investigation, which was the staff members. The commissioners are, as Your Honor pointed out, similar to other boards, have a two-part decision-making process where there's a subcommittee and a full board decision. And this is similar to a lot of other accrediting agencies. For example, ACCSC, which the court's on professional massage, as well as probably countless others. And not to mention corporate boards follow probably a similar process. So, if a committee's evaluation of facts is determined to be pre-judgment, to the full board's decision-making, that would eviscerate not only most accreditation decisions, but could have an impact on just corporate board decisions. I understood the argument to be not— Well, there was an argument that curing the structural problem would be to have the staff recommend— the staff present directly to the full board. I'm sorry, I answered my own question. Go ahead. Ms. Whitelock, can I just go back to the question that Judge Duncan asked you to make sure I understood your position? If the board, in this case, wanted to establish a stricter rule with respect to conflicts of interest and bind its commissioners and staff to comply with that, you seem to be saying that, regardless of that, the floor is set by the case law in terms of a due process violation and there would be no remedy for a violation of what, I guess, you would deem to be aspirational, non-binding rules. Is that your position? No, if that's what I conveyed, I apologize. That's what I understood. I apologize. So the Supreme Court has set the standard. The commissioners and any accrediting agency can obviously go beyond that standard and create additional rules. So why isn't that this case, I guess, is the question that was asked of you. In this case, Mr. Bowman did not know he had a potential conflict and... I don't know that that matters. I mean, if he violated the rules, even if he wasn't aware of it, why does that matter? The rules do not say that a commissioner can't... Which rules are we talking about? The NACIS rules. The NACIS rules lay out what objective, for example, geographical limitations there would be to create a conflict of interest, the state that your company is in, the state that you reside in. No, but it talks about pecuniary benefit. Right. And this goes to the peer review function of accreditation. The smallest amount of pecuniary interest cannot be a disqualifying basis. Are you saying, perhaps, that for purposes of legal action, the Supreme Court's interpretation, it's a due process. It becomes a due process if you're subject to a different standard. Is that what you're saying? Whereas NACIS is free to pursue against its own members internally, a relief for indiscretions that are less significant? I'm still not sure I understand your answer to the question. There would still be a legal cause of action for a commissioner not following NACIS rules. That would be a due process violation. But in this case, the fact that the rule states a pecuniary interest doesn't mean any pecuniary interest or the slightest amount of pecuniary interest because that would disqualify every single commissioner, as the court has pointed out, as the Ninth Circuit pointed out in Stivers v. Pierce. These are all industry participants. Maybe less so in this case where there are 1,300 institutions, but in a case where an accrediting agency is accrediting a smaller number of institutions or programs or a state licensing board that's looking at a smaller number, all of those participants would have maybe a more significant interest. I want to point back to In re Vecco where the court discussed what is a contingent and remote interest. I think that's important here because yes, Mr. Bowman was an executive. He had a stock interest in EEG, though small. But in In re Vecco, the court looked at does the decision-makers ruling in this case directly affect money coming to him? So to put it another way, sorry. To put it another way, is there an intervening or independent decision that would cut off the decision-making process to receive money? And that's at 539F2366. So in this case, the district court found the facts to be that there are students who have to decide based on transportation, based on whether they want their loans forgiven because when a school loses its accreditation, they are allowed to ask the Department of Education for loan forgiveness. There are licensing and regulatory issues. There's education tools. There's a question of whether a student wants to transfer and maybe lose credits, which means that they will have to pay more for their education. There's a lot of factors involved. And all of those factors point to Mr. Bowman's decision as part of the commission to recommend the withdrawal of Ward's Corner's accreditation is not a direct and personal pecuniary interest in the outcome. There are independent intervening decisions along the process as to whether somebody will actually go to his school. And with regard to the three students who transferred, there is information in the record that shows federal funding. Two of those three students transferred before Ward's Corner's accreditation was even withdrawn. So the decision to withdraw- We're talking about the three that we were discussing earlier who were requesting documentation? That's correct. And you're saying when, but was it known when they transferred that Ward's Corner would lose its accreditation? No. The final decision did not come out until October 13th, 2017. Two of those students, well, one of the students transferred before that point. The second student, there's nothing in the record that indicates that they ever went to Ward's Corner. And then the third student did transfer after the decision was made public. There's nothing in the record that indicates how much of a benefit that was. There is evidence that there are regulatory requirements Benefit to whom? Benefit to either EEG or, down the road, Mr. Bowman. So counsel has said there's $50,000 that would come to EEG. That is not in the record. There is evidence that the regulatory scheme in Virginia requires a certain student-to-teacher ratio, which could impact whether an additional student actually is a benefit or would require more administrative fees. So in conclusion, a standard that requires a de minimis or slightest pecuniary interest, whether it's direct or not, would eviscerate the peer review process in both accrediting agencies and licensing boards. Thank you. Thank you. Mr. LaScarra? Yes, thank you. I would like to follow up on the due process issue with respect to violation of NACUS's own rules. I think Judge Duncan has made a very good point and Judge Diaz has followed up with very good questions because their own policy doesn't provide a sliding scale as to pecuniary interest. And the professional massage case talks about, from this Fourth Circuit, talks about the due process rights. And one of those elements of due process is that they must follow their own rules. And I do believe that, as we have argued and as this panel has identified, that there is a rule that says you cannot vote your own pecuniary interest. It doesn't say that there's a sliding scale as to how much or little that interest is, even though the common law due process outside of that rule may require one. According to the judge's opinion, I think it's a very slippery slope of a sliding scale to analyze it that way and that the recusal policy is the way you resolve it. But going back to whether there is a common law due process violation for not enforcing your own rules or breaking your own rules, yes. And that's already been decided by this circuit in professional massage. And so I think on that prong alone, the ruling should be overturned. The second point... But if we agree with you that that's a violation of NACIS's rule, it may be a violation of NACIS's rule. Play that out. Where does that get you? Well, it gets us a reverse decision. We are no longer, in terms of the company... Necessarily, it does? Well, if there... that there is a violation of their due process rights... No, never mind. I'm not making myself clear. That's okay. Well, do the rules define what an improper personal pecuniary benefit is? Material or pecuniary? I mean, I think the word pecuniary is findable in the dictionary and... Oh, sure. I'm talking about improper. It doesn't, more than what it says, abuse his or her position to gain for himself or herself or others improper, personal, material or pecuniary benefits. So it doesn't... It's not tethered to improper. You're saying pecuniary stands alone in the disjunctive. Yes, I believe that is the proper interpretation of the rule. And I don't believe that it was followed. Um, the second point I wanted to follow up on is this, the sky is falling argument. And, um... Do you want to tell us where in your brief you argue the pre-judgment, the pre-judgment bias issue? In your statement of issues? Oh, in the pre-trial... In your statement of issues to us or anywhere, actually. Well, in the opening brief, it starts at page 24. There are lots of... It has to be in your statement of issues. I'm sorry. Never mind, I can go back and look. Okay. And they raised an issue, the pre-trial, tribal pre-trial issues. And again, it was identified as... Did one of the commissioners violate the conflict of interest rules? And it is a form of conflict of interest. And so I think we did identify it as a pre-trial issue. It was also included in our findings of fact and conclusions of law. In lieu of summation, we were required to file and we did that. And that issue was addressed there. I see my time is out. Thank you very much. We will ask the clerk to adjourn court for the day and come down and greet counsel. Thank you. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz